IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| ELISABETH A. SARTAIN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action |
| vs. ) | No. 09–0952-CV-W-JCE-SSA |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**O R D E R**

Plaintiff is appealing the final decision of the Secretary denying her application for disability insurance benefits ["DIB"] under Title II of the Act, 42 U.S.C. § 401, et seq. Pursuant to 42 U.S.C. § 405(g), this Court may review the final decisions of the Secretary. For the following reasons, the Secretary's decision will be affirmed.

Standard of Review

Judicial review of a disability determination is limited to whether there is substantial evidence in the record as a whole to support the Secretary's decision. 42 U.S.C. § 405(g); e.g., Rappoport v. Sullivan, 942 F.2d 1320, 1322 (8th Cir. 1991). Substantial evidence is "'such evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. V. NLRB, 305 U.S. 197, 229 (1938)). Thus, if it is possible to draw two inconsistent positions from the evidence and one position represents the Agency's findings, the Court must affirm the decision if it is supported on the record as a whole. Robinson v. Sullivan, 956 F.2d 836, 838 (8th Cir. 1992).

1

In hearings arising out of an application for benefits, the claimant has the initial burden of establishing the existence of a disability as defined by 42 U.S.C. §§ 423(d)(1) and 1382c(a)(3)(A). Wiseman v. Sullivan, 905 F.2d 1153, 1156 (8th Cir. 1990). In order to meet this burden, the claimant must show a medically determinable physical or mental impairment that will last for at least twelve months, an inability to engage in substantial gainful activity, and that this inability results from the impairment. Id. Once a claimant demonstrates that the impairment is so severe as to preclude the performance of past relevant work, the burden shifts to the Secretary to prove some alternative form of substantial gainful employment that claimant could perform.

The standard by which the ALJ must examine the plaintiff's subjective complaints of pain is well-settled. The ALJ must give full consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as the claimant's daily activities, the duration and frequency of pain, precipitating and aggravating factors, dosage and effects of medication, and functional restrictions. Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). When rejecting a claimant's subjective complaints, the ALJ must make an express credibility determination detailing the reasons for discrediting that testimony, and discussing the factors set forth in Polaski. The ALJ must give full consideration to all of the relevant evidence on the Polaski factors and may not discredit subjective complaints unless they are inconsistent with the evidence in the record as a whole. Haynes v. Shalala, 26 F.3d 812, 814 (8th Cir. 1994).

## Discussion

Plaintiff was 41 years old at the time of her alleged onset date. She alleged disability because of severe arthritis and joint pain in her leg, Meniere's disease, nausea, balance problems, vertigo, pain, fatigue, sleep dysfunction, dizziness, passing out, and hearing problems with pressure in her ear.

According to the testimony at the hearing, plaintiff testified that she could not work because of pain and her frustration over not being able to do things. She also complained about "the unpredictability of Meniere's disease, the, the dizziness, the vertigo, the fear I have with that, of passing out again." [Tr. 26]. She continued to testify that she had had knee replacement surgery in May of 2007, and that it did not stop the pain but rather, made it worse. She stated that when her pain was worse, the episodes of vertigo and dizziness, fatigue and sleeplessness, tolerance for noise and difficulty hearing worsened. Plaintiff testified that she takes Meclizine for vertigo, Adderal for the Meniere's disease, and Xanax or Valium if she has a "real bad episode." [Id.]. She takes pain medication as needed, including over-the-counter medicine, as well as Darvocet. Plaintiff also testified that she takes care of her two younger children, ages two and four, by herself during the day, although she has some help from adult children when they are at home. She acknowledged that she had only seen Dr. Luetje since 2007. It was her testimony that she had previously had symptoms of dizziness and fainting, and described an incident from 1997 when she had a fainting spell at work. She stated that she was asked to take a medical leave of absence and that she didn't work for a long time. She tried to go back to work, but it didn't work out very well, so she quit. After that, she worked as a cleaner at a trucking company, where she had a flexible schedule. She could not do that job today because of worse pain and worse vertigo. She stated that she could not function in an eight-hour day of work

because if she had a spell of vertigo, it might last five minutes or several hours with nausea and dizziness so bad that she can't function.

The ALJ found that plaintiff has not engaged in substantial gainful activity during the period from her amended onset date of September 1, 2005, through her date last insured of December 31, 2006. She further found that through the date last insured, plaintiff suffered from severe impairments consisting of left knee disorder with degenerative joint disease, and a deformity due to a childhood injury. Regarding her other allegations, the ALJ found that a review of the record showed that she had been diagnosed with both Meniere's disease and hearing loss in the right ear, but that there was no hearing loss for conversational speech, that there were no significant residual limitations, and further, that the diagnosis was subsequent to plaintiff's date last insured on December 31, 2006. The ALJ noted that plaintiff was seen in April of 1998 for vertigo, secondary to head trauma, and at that time, the doctor thought it was very doubtful that she had Meniere's disease, and that her symptoms should resolve. The ALJ observed that an MRI and a CT scan of plaintiff's brain and head were both negative at that time. "Consequently, the only severe impairment prior to the expiration of her date last insured is her left knee disorder." [Tr. 11]. It was therefore the finding of the ALJ that plaintiff is not under a disability as defined by the Act.

Plaintiff argues for reversal and remand of the decision on the grounds that the ALJ erred in failing to find the symptoms related to Meniere's Disease were a severe impairment. It is her position that when the ALJ declined to find this was a severe impairment, it was possible that any additional severe impairment would have resulted in a finding that there was no work she could perform. She contends that this is true because based on the evidence upon which the ALJ

did rely, she was already limited to less than a full range of sedentary work.

Having fully reviewed the record, the Court finds that there is substantial evidence in the record as a whole to support the decision of the ALJ. The Court has carefully reviewed plaintiff's medical records, as well as the testimony at the hearing, and relevant case law. The law is clear that, for an entitlement to benefits under Title II, plaintiff has the burden of showing that she was disabled as defined by the Act prior to the expiration of her insured status. Pyland v. Apfel, 149 F.3d 873, 876-77 (8th Cir.1998); 42 U.S.C. 416(i)(3); 20 C.F.R. § 404.130. A non-disabling condition, which later develops into a disabling condition after the expiration of a claimant's insured status, cannot be the basis for an award of disability benefits under Title II. Thomas v. Sullivan, 928 F.2d 255, 260-61 (8th Cir.1991). It is not enough that the impairments existed before the date a claimant's insured status expired; the impairments must have been disabling at that time. Lopez v. Bowen, 806 F.2d 632, 633 (5th Cir. 1986); 20 C.F.R. § 404.131(a). In this case, the date plaintiff was last insured was December 31, 2006.

According to the medical records, Dr. Luetje saw plaintiff in 2007 for a neurological consultation. He noted that plaintiff's "symptoms began in 1998 with vertigo but she had some fluctuant hearing loss with pressure and fullness in the right ear prior to that. . . ."]. [Tr. 218]. He found that she had symptoms in her right ear, which he thought were characteristic of endolymphatic hydrops (Meniere's disease). The medical records from 1998, when plaintiff was admitted to the hospital after a blow to the head, noted that her chief complaint was dizziness and noise in the right ear. While the doctor observed that she had had recent head trauma, with some symptoms of vertigo, he also noted that she "does have a history of having had some symptoms which began a year ago this fall with some unusual sounds in her right ear. . .[which]

5

has always been on the right side." [Tr. 231]. He diagnosed her with recent head trauma, vertigo, hearing loss in her right ear, and tinnitus in her right ear. Another medical notation from the same time period indicated that post-concussion syndrome, possible migraine, and Meniere's disease should be considered. At the time, the doctor opined that she might be suffering from post-concussion syndrome, and also noted that she had been suffering from tinnitus and a pressure-like feeling in her ear, which may have been a result of an episode of attempted strangulation. The doctor doubted Meniere's disease, but did not rule it out, suggesting that she get the opinion of a specialist. Another notation from the same time period indicated that Dr. Robinson, the neurological consultant, could not rule out Meniere's disease because of "longer standing symptoms." [Tr. 244]. When plaintiff saw a doctor in March of 2006for left knee pain, she also complained of dizziness and vertigo. The doctor noted that there were symptoms of Meniere's disease, but did not include the disease as one of her diagnoses. Again in July, Dr. Gillen noted the same symptoms, but did not include Meniere's Disease as a diagnosis.

While there are references in the medical records to plaintiff's complaints of dizziness and vertigo from approximately 1998, it is apparent that the condition was not diagnosed until after the date plaintiff was last insured. Even though she suffered from symptoms, which medical personnel thought might be Meniere's disease, there is no indication that Meniere's Disease was ever diagnosed, or that the symptoms were disabling. The bulk of the medical records were after an incident when plaintiff had suffered head trauma, and the doctors were addressing her condition in terms of dizziness after the result of that trauma, and possibly from an earlier incident of attempted strangulation. They were willing to consider Meniere's Disease, migraines, and post-concussion syndrome. There is a notable absence of medical records in the

6

file of complaints regarding dizziness or vertigo for a period from 1998 until 2006. It also appears from the record that in 2006, plaintiff sought treatment for her knee. Based on the record as a whole, the Court finds that the ALJ did not err in her decision to not find Meniere's Disease as a severe impairment. Under the law, the fact that she had earlier symptoms, which were not disabling, and was not diagnosed with the condition until after the date she was last insured, does not establish that she had a severe impairment during the relevant time period.

Based on the record before it, the Court finds that the ALJ's decision is supported by substantial evidence in the record. Dukes v. Barnhart, 436 F.3d 923, 928 (8th Cir. 2006). Accordingly, the decision of the Secretary should be affirmed.

It is hereby

ORDERED that the decision of the Secretary should be, and it is hereby, affirmed.

/s/ James C. England  
JAMES C. ENGLAND  
United States Magistrate Judge

Date: 2/11/11